Judge Marshall

delivered the Opinion of the Court.
It cannot be admitted that an artificer of any sort is to be considered as undertaking that any machine, instrument or vessel, which he makes for the use, and by the direction of another, and according to specifications furnished by his employer, shall answer the purpose for which it was designed by the projector. It is the projector, the man who designs the instrument, and con *359 trols its material, shape, and mode of construction, who is responsible for its adaptation, in material, shape and mode of construction, to the end for which it is intended. The artificer, who actually constructs it, is only bound to do his work in a substantial, workman like and skilful manner, and to pursue the specification in the contract, or the direction of his employer, in regard to material, shape, and mode of construction. If he does this, he is entitled to a reasonable reward for his labor, though the machine, instrument or vessel, may wholly fail to perform its intended office.
The drying cylinder, for which Ricketts claims compensation in this case, was made for E. A. Lease, to be used for drying paper in his steam paper mill; which was to be effected by the introduction of steam from the boiler into the cylinder on which the wet paper would be placed. The cylinder was made under a contract which specified its shape and dimensions, and the material of which it should be made, and further stipulated that “it should be steam tight, and capable of sustaining a pressure of thirty pounds, to the inch,”' It sufficiently appears that the cylinder did not answer the purpose, and that, after being used for some time, during which there, were some ineffectual attempts by Ricketts, to mend and alter it, it was laid aside, and other drying works substituted. The specific objection is, that the vessel was not steam tight.' But surely the stipulation that it shall be steam tight, and shall be capable of sustaining a. pressure of thirty pounds to the inch, means that it shall be steam tight when subject to a pressure not exceeding thirty pounds to the inch-, and does not mean that it shall be steam, tight whatever may be the pressure of steam upon it; and unless the vessel when declared fit for use, leaked steam at a pressure- of thirty pounds or less to the-inch, or afterwards became open and leaky under a pressure not exceeding that rate, there was no breach of contract in this respect, on the part of the maker.
On scrutinizing the evidence, it appears that the boiler with which the cylinder was connected, was capable, of sustaining sixty pounds to the inch, and that the safety valve was not thrown open by a less pressure; that *360 when the connecting tube between the boiler and cylinder was open, the cylinder was subject to the same pressure, and that the cylinder did in fact burst within two or three weeks after it was put to use. No witness, not even Lease himself, says it leaked from the first, or before it bursted, add one witness states that it did not leak until after it bursted, and that it would take a pressure of about sixty pounds to burst it. The same witness, being the individual who actually did the work upon it, says it was done in a workmanlike manner; and no witness who professes to have seen the work in its original condition, says it was not well done. It also appears that the work was done under the inspection and direction of Lease; and although he says, in general terms, that it never was finished according to contract, he does not specify any particular in which it was defective. And it is the opinion of one witness, on apparently plausible grounds, that a cylinder constructed of the materials prescribed by the contract in this case, could not be made to answer the purpose of drying paper with advantage.
We think the fair deduction from this evidence is, that tire leaking of the cylinder was occasioned by its bursting, in consequence of a greater pressure of steam up on it, than that which it was warranted to bear; that its ill adaptation to the purpose for which it was intended, arose not from any deficiency in the workmanship, or from any departure from the contract on the part of Ricketts, but from defects in the plan or design of the cylinder, and of its connection with the boiler.
Ricketts, therefore, was entitled to the usual compensation for the cylinder, which does not appear ever to have been returned, or even offered to him, and also for his other work, to which no objection has been made; and the Chancellor erred in not allowing such compensation in this case, to the extent of the complainant’s demand against Ricketts, and as an offset to it.
Wherefore, the decree is reversed, and the cause remanded, with directions to render a decree in conformity with this opinion.